IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| MARK GRIFFITH, | | No. 6:12–cv–00011 |
| | *Plaintiff*, | |
| v. | | MEMORANDUM OPINION |
| WAL-MART STORES EAST, L.P., | | JUDGE NORMAN K. MOON |
| | *Defendant.* | |

This employment discrimination case is before the Court upon consideration of Defendant's Motion to Dismiss. (docket no. 69). Citing Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure, Defendant seeks the dismissal of Plaintiff's Complaint in its entirety. This Court has jurisdiction under 28 U.S.C. § 1331, the federal question statute, as well as 28 U.S.C. § 1367(a), the supplemental jurisdiction statute, governing Plaintiff's claims that are "closely related to" his claims arising under federal law. Although no hearing has been scheduled, I will Order that Defendant's Motion not be withdrawn, and I will instead decide the Motion on the submissions. *Cf.* W.D. Va. Civ. R. 11(b) ("*Unless otherwise ordered*, a motion is deemed withdrawn if the movant does not set it for hearing (or arrange to submit it without a hearing) within 60 days after the date on which the motion is filed.") (emphasis added). And for the reasons that follow, I will GRANT Defendant's Motion in part, and DENY it in part, in an appropriate Order, to follow.

# I. BACKGROUND

## A. Procedural History

In June, 2011, Plaintiff Mark Griffith, along with nine other Plaintiffs, commenced this action by filing a Complaint in United States District Court for the Eastern District of North Carolina.  (docket no. 5).[1]  On February 14, 2012, by Order of United States District Judge Terrence W. Boyle, Griffith's case was transferred to the Western District of Virginia.  (docket no. 62).  Griffith did not amend his Complaint after the transfer, so it sets forth certain claims for relief that expressly do not concern him.  Herein, I only recount those alleged facts that involve Griffith, either generally or specifically.

## B. Griffith's Allegedly Unlawful Treatment

Griffith, a resident of Bedford County, Virginia, is a former Wal-Mart employee who complains of discriminatory treatment based on his age and sex.  Compl. ¶ 15, 199–216.  At the time of filing, Griffith was fifty-eight years old.  Compl. ¶ 200.  He worked at Wal-Mart Store # 1399 in Bedford, Virginia from January, 2002 until his termination on or about October 22, 2010.  Compl. ¶ 16, 201–02.  At the time of his termination, Griffith was Co-Manager[2] of Store # 1399.  Compl. ¶ 202.  The[3] other Co-Manager at Store # 1399 was Ms. Jennifer Campbell, a younger female.  *Id.*  Griffith alleges that, prior to his termination, he had "compiled an

---

[1] The Plaintiffs initially filed a Complaint on June 10, 2011, (docket no. 1), but the court deemed the Complaint deficient due to Plaintiffs' failure to pay the $350 filing fee.  Plaintiffs re-filed and paid the fee on June 13, 2011.

[2] Whether Griffith was hired as Co-Manager, or whether he was instead promoted to this position, is unclear from the Complaint.  *See* Compl. ¶ 202 ("Mr. Griffith *achieved* the position of Co-Manager . . . .") (emphasis added).

[3] It seems that Griffith and Campbell were the only two Co-Managers at Store # 1399, but it is possible that Campbell was *a* Co-Manager with Griffith, and not *the* Co-Manager with Griffith.

exemplary performance record and was rewarded by Wal-Mart with numerous promotions and performance based bonuses." Compl. ¶ 201.

Griffith complains that Wal-Mart engaged in a number of allegedly unlawful practices. First, Griffith alleges generally that, when compared to his younger colleague, Ms. Campbell, he was "subjected to different terms and standards . . . ." Compl. ¶ 202. Griffith further alleges that, in 2007, 2008, and 2009, he "was disciplined for infractions that were inconsistent with Wal-Mart's policy and applied inconsistently." Compl. ¶ 203. In response to this inconsistent treatment, Griffith filed complaints about a "hostile work environment" with the Human Resources staff members; Wal-Mart, however, took no action. Compl. ¶ 204.

Griffith also alleges an instance in which he was given a "verbal warning for alleged profanity and alleged quality assurance issues," by Market Manager Steve Wilmouth. Compl. ¶ 62, 205. This warning, however, was inconsistent with Wilmouth's treatment of a younger employee who managed a Wal-Mart store in nearby Lynchburg, Virginia. Compl. ¶ 205.

Additionally, Griffith claims that he and Campbell "mutually achieved a goal as Co-Managers," but only Campbell received a "Time Off Award" for her efforts. Compl. ¶ 206. Furthermore, Griffith alleges that Campbell was allowed to spend significant time during her shift in the Manager's office to complete paperwork, although Griffith was not afforded that accommodation, and had to complete his own paperwork in the associates' lounge. Compl. ¶ 207–09. Griffith claims, without explanation, that having to complete paperwork in the associates' lounge while Campbell worked in the Manager's office led to Griffith being disciplined. Compl. ¶ 209. Finally, according to the Complaint, Wal-Mart abused its progressive disciplinary policy by skipping certain steps when disciplining Griffith. Compl. ¶ 210.

On October 12, 2010, Griffith filed a charge of discrimination ("charge") with the Equal Employment Opportunity Commission ("EEOC"), summarizing the above allegations.  *See* Def.'s Mem. Ex. 1.  Griffith was soon terminated, and he filed an amended EEOC charge to reflect that fact.  *See* Def.'s Mem. Ex. 2.[4]  After receiving a Notice of Right to Sue from the EEOC, *see* Compl. Ex. 9, he and the other Plaintiffs filed suit.

### C.  Wal-Mart's Alleged Culture of Discrimination

The Complaint also rehearses a set of facts said to commonly apply to all Plaintiffs, including Griffith.  These "cultural" allegations generally claim that Wal-Mart systematically endorsed a corporate environment that discriminated against older or long-tenured employees by terminating such employees and replacing them with younger workers.  Compl. ¶¶ 30–85.  In support of these wide allegations, Plaintiffs attached what is said to be an internal Wal-Mart memorandum, entitled "Reviewing and Revising Wal-Mart's Benefits Strategy" (the "Benefits Memorandum") to the Complaint.  Compl. Ex. K.

The twelve page Benefits Memorandum, prepared by Wal-Mart's Executive Vice President of Benefits, M. Susan Chambers, Compl. ¶ 68–69, is an internal Wal-Mart document addressing the company's rising benefit costs.  Among other things, it details Wal-Mart's fiscal challenges, stating that "[g]rowth in benefits costs is unsustainable . . . and driven by fundamental root causes (e.g. aging workforce, increasing average tenure).  Unabated, benefits costs will consume an incremental 12 percent of our total profits in 2011 . . . ."  Compl. Ex. K, at 1.  The document identifies increasing health care utilization as a primary cost driver, noting that

---

[4] Defendant has attached both of Plaintiff's EEOC charges as Exhibits to its Memorandum.  While ordinarily I "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . [,] there are exceptions to [that] rule . . . .  Specifically, a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed."  *Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395, 395 (4th Cir. 2006) (per curiam) (citations omitted).  I may therefore consider Plaintiff's EEOC charges without converting the instant proceeding into one for summary judgment.

these costs were fueled by Wal-Mart's rapidly aging workforce.  *Id.* at 2.  Next, the Benefits

Memorandum describes the correlation between tenure and benefits costs as follows:

> Given the impact of tenure on wages and benefits, the cost of an Associate with 7 years of tenure is almost 55 percent more than the cost of an Associate with 1 year of tenure, yet there is no difference in his or her productivity . . . .  Moreover, because we pay an Associate more in salary and benefits as his or her tenure increases, we are pricing that Associate out of the labor market, increasing the likelihood that he or she will stay with Wal-Mart.

*Id.* at 3.  Finally, the Benefits Memorandum suggests that in order to reduce benefit costs, Wal-

Mart should redesign benefits and other aspects of the work experience "to attract a healthier,

more productive workforce."  *Id.* at 10.

Griffith claims that the Benefits Memorandum establishes, among other things, a

directive that encouraged Wal-Mart's Market Managers to manipulate the company's "Coaching

for Improvement" progressive disciplinary system in an effort to reduce its number of older,

longer-tenured employees.   Compl. ¶ 84.   Specifically, Griffith claims that Wal-Mart

systematically understaffed stores managed by associates over the age of forty in order to

manufacture and document problems that could lead to termination, thereby creating a pretext for

firing these older employees.  Compl. ¶ 32.  According to Griffith, Wal-Mart routinely subjected

older workers to a disproportionate amount of disciplinary actions as a means to harass and

pressure older employees to leave, so that Wal-Mart could replace them with younger associates.

Compl. ¶¶ 39–40.

With the foregoing facts specifically or generally alleged, Griffith claims that he has

suffered mental anguish and emotional distress, causing economic loss, emotional distress,

humiliation, and damage to his reputation and career.  Compl. ¶¶ 214–16.  Griffith claims that

Wal-Mart's "discriminatory actions were intentional, done with malice, and/or showed willful,

wanton, and reckless indifference to" Griffith's civil rights.  Compl. ¶¶ 214–15.  The Complaint,

in portions relevant to Griffith, requests relief for violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. ("ADEA") (First Claim for Relief), Wrongful Discharge Based on Age as a Violation of North Carolina's Public Policies as Set Forth in N.C.G.S. § 143-422.1 *et seq*. (Second Claim for Relief), Negligent Retention and Supervision (Seventh Claim for Relief), Intentional Infliction of Emotional Distress (Eighth Claim for Relief), and Negligent Infliction of Emotional Distress (Ninth Claim for Relief).  Compl. ¶¶ 336–58; 403–23.

## II.  APPLICABLE LAW

### A.  Rule 12(b)(1)

In a motion to dismiss pursuant to Rule 12(b)(1), "the burden of proving subject matter jurisdiction is on the plaintiff" attempting to invoke a federal court's jurisdiction.  *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).  In deciding whether jurisdiction exists, the court "may consider evidence outside the pleadings without converting the proceeding into one for summary judgment."  *Id.*  But a court should only grant such a motion when "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Id.* (citing *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987)).

### B.  Rule 12(b)(6)

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept[] all well-pled facts as true and construe[] these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint."  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).  To reiterate, a motion to dismiss only tests the legal

sufficiency of a plaintiff's complaint; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In the employment discrimination context, "[w]hile a plaintiff is not charged with pleading facts sufficient to prove [his] case, as an evidentiary matter, in [his] complaint, a plaintiff *is* required to allege facts that support a claim for relief." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

## III. DISCUSSION

### A.  ADEA Claims (First Claim for Relief)

Under the ADEA, it is unlawful for an employer to, among other things,

> discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[, or] . . . to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age . . . .

29 U.S.C. § 623(a).

Griffith's First Claim for Relief alleges that Wal-Mart's actions, as described above, constitute harassment and discrimination based on age, Compl. ¶ 337, or, in the alternative, that Griffith's Market Manager created a hostile working environment, Compl. ¶ 338. Griffith also alleges that he was retaliated against after filing his EEOC Charge of Discrimination. Compl. ¶ 213. I organize Plaintiff's ADEA claims into three categories: (1) Harassment/Hostile Work Environment, (2) Discrimination/Disparate Treatment, and (3) Retaliation. I will discuss each, in turn, after first considering Defendant's jurisdictional argument pertaining to exhaustion.

7

## 1. Exhaustion

Defendant argues that Griffith's claims for harassment and retaliation must be dismissed because, with respect to these claims, Griffith failed to exhaust his administrative remedies. "Before a plaintiff may file suit under . . . the ADEA, he is required to file a charge of discrimination with the EEOC . . . ." *Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009) (citing 29 U.S.C. § 626(d)(1)). Importantly, "a failure by the plaintiff to exhaust administrative remedies . . . deprives the federal courts of subject matter jurisdiction over the claim." *Id.* at 300–01 (citations omitted). A plaintiff's administrative charge, however, "does not strictly limit" a civil suit that might follow such a charge; "rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) (quoting *Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)).

When Plaintiff completed his two EEOC Charge of Discrimination forms, he selected only the boxes for "age" and "sex" discrimination on each; he did not select the box for "retaliation." *See* Def.'s Mem. Exs. 1 and 2. Defendant posits that, due to this failure, Plaintiff did not exhaust his administrative remedies, and Plaintiff's claims for retaliation and harassment before this Court must be dismissed. Although Plaintiff, in his Response to Defendant's Motion to Dismiss, does not address these jurisdictional questions, I will not dismiss those parts of his Complaint alleging harassment or retaliation.[5]

As I mentioned, Plaintiff's first EEOC charge, dated October 12, 2010, includes check marks on only the boxes for "sex" and "age" discrimination. The other options include "race,"

---

[5] In its Reply brief, Defendant submits that Plaintiff has conceded any issues Defendant raised in its Memorandum of Law in Support of its Motion to Dismiss to which Plaintiff did not specifically respond. *See, e.g.*, *FDIC v. Bender*, 127 F.3d 58, 68 (D.C. Cir. 1997); *Kulik v. Cochran*, 975 F. Supp. 812, 814 (E.D. Va. 1997). These cases, however, provide only that a district court *may* treat the failure to precisely respond to an argument as a concession of the point. I do not elect to do so herein.

"color," "religion," "national origin," "retaliation," "disability," "genetic information," and "other," but none is checked. Plaintiff filled out the "particulars" section of his first EEOC charge as follows:

> I was hired in January 2002, and currently employed [*sic*] as a Co-Manager at the aforementioned store. During my tenure, I have been subjected to different terms and standards than the other female co-manager, who are [*sic*] younger than I am. Within the last three years, in April 2007, February 2008, and February 2009, I was disciplined for infractions inconsistent with policy. I complained to Human Resource[s] staff members about being subjected to a hostile work environment, but no action was taken. As recent[ly] as January 2010, Steve Wilmouth, Supervisor, gave me a verbal warning that was not consistent with how he treated my female younger comparator [*sic*]. In September 2010, a younger female co-manger . . . was given a time off award for an achievement, but I was not, even though we worked together to achieve the goal. On or about October 7, 2010, I was given a "Needs Improvement" evaluation. On or about October 11, 2010, I was placed on suspension.
>
> Mr. Wilmouth stated [that] I was written up for production being late, improper back room conditions, using profanity, not following procedures[,] and accused me of spending two hours in a break room. I was not given a reason for the most recent suspension.
>
> I believe that I am being subjected to different terms and conditions of employment, disciplined, and suspended because of my age, 58, in violation of the Age Discrimination in Employment Act of 1967, as amended and because of my sex, male, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Def.'s Mem. Ex. 1, at 2–3. Shortly after Griffith submitted his first EEOC charge, Wal-Mart terminated his employment. Griffith then filed an amended EEOC charge to reflect his changed employment status. On the amended form, the same two boxes, "sex" and "age," are checked, and the narrative is substantially the same as that quoted at length above. The only differences in the two narratives are that, at the conclusion of the first paragraph in the amended charge, Plaintiff states that "[o]n or about October 22, 2010, I was officially terminated," and Plaintiff replaces the second sentence in the second paragraph with "I was later given a letter from Mr.

Wilmouth stating that I was suspended pending a resolution of an investigation.  I was also advised that I was terminated because of my performance."  Def.'s Mem. Ex. 2, at 2–3.

> In the ADEA context,
>
> [c]ourts liberally construe EEOC charges and have consistently offered two reasons to do so. . . .  First, complaints to the EEOC are generally filed by lay persons uninformed of their specific legal rights and, second, the predominant purpose of an EEOC filing is to put defendants on notice of potentially viable claims and to screen out spurious ones.

*Conron v. Novatec, Inc.*, Civil Action No. RDB–08–45, 2008 WL 2559386, at *3 (D. Md. June 23, 2008) (citations omitted).  Consistent with the aforementioned predominant purpose behind requiring a prospective plaintiff to file with the EEOC, the two charges effectively put Wal-Mart on notice of Griffith's potentially viable claims.  With respect to "harassment," the narrative contained in each of Plaintiff's EEOC charges alleges "being subjected to a hostile working environment" and, in light of the liberal construction afforded EEOC complaints, Plaintiff's charge of discrimination adequately puts Defendant on notice of a potential harassment/hostile work environment cause of action based on age, and will not be dismissed on jurisdictional grounds.

Turning to "retaliation," the United States Court of Appeals for the Fourth Circuit has established "that a claim of 'retaliation for the filing of an EEOC charge as discrimination' is indeed 'like or reasonably related to and growing out of such allegations.'"  *Jones v. Calvert Grp.*, 551 F.3d 297, 302 (4th Cir. 2009) (quoting and applying an earlier case, *Nealon v. Stone*, 958 F.2d 584 (4th Cir. 1992), which established that principle).  In this way, a retaliation claim relates back to an earlier-filed EEOC charge.  Moreover, *Jones* clarified that *Nealon* did not set forth a "pendency" requirement for relation back.  *Id.*  In other words, the *Nealon* rule allowing relation back is not restricted to only those cases in which the alleged retaliatory act occurred

during the pendency of the prior EEOC charge's administrative investigation.  *Id.*  Under the foregoing, Griffith's retaliation claim in the instant lawsuit clearly could have related back to his first EEOC charge, had he not filed an amended charge.  Defendant submits that Griffith's retaliation claim must nonetheless be dismissed now, however, because Griffith *did* proceed to amend his EEOC charge to reflect his termination, but failed check the "retaliation" box, despite having been terminated in the meantime.

Considering the above, and giving the EEOC charges the liberal construction that I must, I cannot conclude that the scope of the administrative action reasonably expected to follow Plaintiff's EEOC charge would not include harassment, or retaliation, or both, and I therefore find that this Court has subject matter jurisdiction over those claims, as alleged in Plaintiff's Complaint.

## 2.  Failure to State a Claim

The parties dispute what set of facts, precisely, must be pleaded by an ADEA plaintiff to prevail over a defendant's motion to dismiss.  Plaintiff submits that, when a court is considering the sufficiency of the pleadings under Rule 12(b)(6), "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)).  Rather, a plaintiff like Griffith must simply "nudge[ his] claim[] across the line from the conceivable to the plausible."  *Id.*

It is true that "[e]mployment discrimination claims carry no heightened pleading standard."  *Alexander v. City of Greensboro*, 762 F. Supp. 2d 764, 780 (4th Cir. 2011) (citing *Twombly*, 550 U.S. at 569–70).  Defendant, though, relies on the Fourth Circuit's post-*Swierkiewicz* (but pre-*Twombly* and pre-*Iqbal*) language in *Bass v. E.I. DuPont de Nemours &*

*Co.*, 324 F.3d 761, 764 (4th Cir. 2003), in which the Fourth Circuit explained that it "has not . . .

interpreted *Swierkiewicz* as removing the burden of a plaintiff to allege facts sufficient to state all

the elements of [his] claim."  The *Bass* opinion further admonishes that

> [w]hile a plaintiff is *not* charged with pleading facts sufficient to prove [his] case,
> as an evidentiary matter, in [his] complaint, a plaintiff *is* required to allege facts
> that support a claim for relief.  The words "hostile work environment" are not
> talismanic, for they are but a legal conclusion; it is the alleged facts supporting
> those words, construed liberally, which are the proper focus at the motion to
> dismiss stage.

*Id.* at 765 (first emphasis added).  Although some district courts in this circuit have questioned

the viability of *Bass*, *see Cockerham ex rel. Cockerham v. Stokes Cnty. Bd. of Educ.*, 302 F.

Supp. 2d 490, 495–96 (M.D.N.C. 2004); *Radbod v. Washington Suburban Sanitary Comm'n*,

No. Civ. JFM–03–309, 2003 WL 21805288, at *4 n.5 (D. Md. July 14, 2003), the case continues

to be widely cited by other district courts, and I am bound to adhere to the Fourth Circuit's

pronouncements in *Bass*—like the block quote I have included above—to the extent they do not

conflict with later rulings from the Supreme Court of the United States.  I will thus consider

whether Plaintiff has alleged facts that, construed in a light most favorable to Plaintiff, can

plausibly support his claims for relief, given the elements required to eventually prove the causes

of action he has asserted.

### a. Harassment/Hostile Work Environment

While not formally recognizing the availability of a cause of action for hostile work

environment under the ADEA, the Fourth Circuit has "previously assumed, without deciding,"

that such a claim "is generally cognizable under the ADEA for plaintiffs age forty or older."

*Baqir v. Principi*, 434 F.3d 733, 746 n.14 (4th Cir. 2006) (citing *Burn v. AAF-McQuay, Inc.*, 166

F.3d 292, 294 (4th Cir. 1999); *Causey v. Balog*, 162 F.3d 795, 801 n.2 (4th Cir. 1998)).

The Fourth Circuit has indicated that, in order to state a prima facie claim for hostile work environment, a plaintiff must show that: "(1) the harassment was unwelcome; (2) the harassment was based on his race or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Causey v. Balog*, 162 F.3d at 801 (citing *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 772 (4th Cir. 1997)). Furthermore, a plaintiff "must show that 'but for' his . . . age, he would not have been the victim of the alleged discrimination." *Id.*

Plaintiff's Complaint has not alleged facts, accepted as true, that would allow his harassment or hostile work environment claim to survive Defendant's Motion to Dismiss under Rule 12(b)(6). With general reference to the Benefits Memorandum, Plaintiff claims that his superiors treated him differently from his younger colleagues. Specifically, as mentioned above, Griffith alleges that he experienced disciplinary treatment that was inconsistent with the treatment received by a younger manager at a nearby store; that despite mutually achieving a goal with his younger Co-Manager, only that younger Co-Manager was recognized with an award; that the younger Co-Manager was given preferential treatment with respect to assigned workspace; that he, Griffith, had to work in an associates' lounge; that having to do so was humiliating; that Defendant improperly skipped progressive disciplinary steps when dealing with Plaintiff; and that the foregoing was all motivated by Wal-Mart's policy to push out older, more expensive employees.

I cannot, under only these circumstances, allow Plaintiff's hostile work environment claim to proceed to discovery. Plaintiff has simply failed to plead facts sufficient to set forth a plausible claim of relief, considering elements (3) and (4), recounted above. Plaintiff's allegations involve only isolated incidents of different treatment, and simply "do not describe the

13

type of severe or pervasive . . . age based activity necessary to state a hostile work environment claim." *Bass*, 324 F.3d at 765.   I further observe that, while the Benefits Memorandum does perhaps "provide[] a direct glimpse of an existing managerial *attitude* towards older workers," Pl.'s Resp. 7 (emphasis added), the existence of the Benefits Memorandum does not, without more, allege that *this Plaintiff* experienced a hostile work environment *himself*.   And although Plaintiff conclusorily asserts that certain "harassment of *Plaintiffs*" was "severe and pervasive," Compl. ¶ 339 (emphasis added), the specific allegations involving Griffith do not rise to the level of severity and pervasiveness that would allow the claims to go forward.   Because the specific allegations contained in Griffith's claim do not satisfy the tests set forth above, I will dismiss his harassment and hostile work environment claims.

### b.  Discrimination/Disparate Treatment

Griffith also alleges discrimination based on his age.  Compl. ¶ 337.  While Griffith does not use the words "disparate treatment" in those portions of the Complaint that are relevant to him,[6] the facts set forth and styled as "discrimination" might be most properly assessed under the cases governing disparate treatment, and, out of an abundance of caution, I will consider the law under both theories in deciding Defendant's request for dismissal.

"To establish a prima facie case of disparate treatment based on . . . age, the plaintiff must show that (1) he is a member of a protected class; (2) he was subject to an adverse employment action; and (3) he was treated differently than similarly situated employees outside of his protected class." *Burgoon v. Potter*, 369 F. Supp. 2d 789, 796–97 (E.D. Va. 2005) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  And, similarly,

---

[6] The Complaint does use "disparate treatment" with respect to Bruce Bannister, one of the other original Plaintiffs. *See* Compl. ¶¶ 99–100).

[a] prima facie case of age discrimination under the ADEA consists of four elements: (1) the plaintiff is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.

*Poore v. Peterbilt of Bristol, LLC*, --- F. Supp. 2d ---, --- (W.D. Va. 2012) (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004).

I find that Plaintiff's discrimination/disparate treatment claim survives Defendant's Motion to Dismiss. Plaintiff, having filed the instant suit when he was fifty-eight years old is, of course, a member of a protected class under the ADEA. 29 U.S.C. § 631(a) ("The prohibitions in this chapter shall be limited to individuals who are at least 40 years of age.").

An adverse employment action under the ADEA results from an employer materially altering the terms, conditions, or benefits of employment. *Burgoon*, 369 F. Supp. 2d at 797 (citing *Von Gunten v. Md.*, 243 F.3d 858, 866 (4th Cir. 2001)). "An inquiry into the adverse nature of an employer's action ordinarily focuses on whether the employee has suffered termination, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or decreased opportunities for promotion." *Id.* (citing *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999)). Plaintiff's Complaint sufficiently alleges such adverse employment action. For instance, Plaintiff alleges that he faced procedurally improper disciplinary actions, Compl. ¶ 210–11, which plausibly led to decreased opportunities for Plaintiff's promotion. Plaintiff was also eventually terminated. While I discuss this termination again below as part of my analysis of Plaintiff's retaliation claim, it can also serve to represent an adverse employment action for purposes of Plaintiff's discrimination/disparate treatment claim.

When it comes to element (3) of a disparate treatment case, Plaintiff alleges that he was relegated to working in an associates' lounge while a similarly situated younger Co-Manager

worked primarily in the Manager's office.  Compl. ¶ 207.  He also alleges that a certain verbal warning he received was inconsistent with the treatment of a younger manager in a nearby Lynchburg Wal-Mart store.  Compl. ¶ 205.  Finally, he claims that he was not given due credit for mutually achieving a goal with his younger Co-Manager, although she received a "Time Off Award" for that achievement.  Compl. ¶ 206.  Looking to elements (3) and (4) of a discrimination case, Griffith has stated that he had "compiled an exemplary performance record," and, although he does not specifically claim knowledge that his position was left open or filled by a younger employee, the allegations in his Complaint make such facts plausibly inferable.  I will deny Defendant's Motion to Dismiss with respect to Plaintiff's discrimination/disparate treatment claim.

### c. Retaliation

A prima facie case of retaliation requires that a plaintiff show that "(1) he engaged in protected activity; (2) his employer took an adverse employment action against him; and (3) a causal connection existed between the protected activity and the adverse action."  *Zhang v. Sci. & Tech. Corp.*, 382 F. Supp. 2d 761, 774 (D. Md. 2005) (citing *Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 754 (4th Cir. 1996)).  Here, Plaintiff has pleaded sufficient facts to establish the plausibility of his retaliation claim.  Griffith filed his first EEOC charge prior to his ultimate termination on October 12, 2010, and he was terminated ten days later.  Plaintiff sufficiently alleges that the reason he was terminated was at least in part due to his initial filing, Compl. ¶ 213, and I will allow his retaliation claim to proceed.

16

### B.  North Carolina Public Policy Claim (Second Claim for Relief)

Plaintiff's Second Claim for Relief alleges that he was wrongfully discharged based on his age, in violation of North Carolina public policy, as set forth in N.C.G.S. § 143–422.1 *et seq.* N.C.G.S. § 143–422.2 declares that North Carolina's public policy is "to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers."  I observe that the Second Claim for Relief involves Plaintiff Griffith, as well as five of the nine original, non-transferred, Plaintiffs.  Significantly, Griffith is the only one of said Plaintiffs to not have worked or resided in North Carolina at times relevant to the instant Complaint.  *See* Compl. ¶¶ 7, 13, 15, 17, 21, 25 (introducing each Plaintiff associated with the Second Claim for Relief).

Before considering this and the other common law claims set forth in the Complaint, I first endeavor to briefly explain relevant choice of law rules that will influence my analysis on Plaintiff's Second, Seventh, Eighth, and Ninth Claims for Relief.  As I have mentioned, Plaintiff's case was transferred, upon Motion of the Defendant, here from the Eastern District of North Carolina under 28 U.S.C. § 1404(a).  And

> in cases [like this one] . . . where the defendant[] seek[s] transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue.  A change of venue under [§] 1404(a) generally should be, with respect to state law, but a change of courtrooms.

*Van Dusen v. Barack*, 376 U.S. 612, 639 (1964).  Pursuant to the foregoing, the applicable state law I must apply is North Carolina's.

North Carolina applies two different rules in tort actions.  "Under the traditional rule, the court applies the law of the place of injury.  Under the modern rule, the court applies the law of

the place having the 'most significant relationship' to the allegedly tortious conduct." *Simms Inv. Co. v. E.F. Hutton & Co.*, 688 F. Supp. 193, 198 (M.D.N.C. 1988).  Whether I apply North Carolina's "traditional" or the "modern" rule, however, is of no consequence, since it is clear that, under either rule, a North Carolina court would apply Virginia law, since Virginia is both "the place of injury" and the place having the "most significant relationship" to Defendant's allegedly tortious conduct.

Turning to Virginia, the Commonwealth follows the doctrine of *lex loci delicti*, meaning that the law of the state in which the alleged tort occurred governs the parties' substantive rights. *Mainstreet Bank v. Nat'l Excavating Corp.*, 791 F. Supp. 2d 520, 530 (E.D. Va. 2011).  North Carolina Public Policy statements, as set forth by N.C.G.S. § 143–422.1 *et seq.*, therefore, provide Griffith with no viable claim in this Court, and I will dismiss Plaintiff's Second Claim for Relief in its entirety.

### C.  Negligent Retention and Supervision (Seventh Claim for Relief)

#### 1.  Negligent Retention

Plaintiff alleges that Wal-Mart knew or should have known of certain managers' propensities to engage in tortious conduct, but took no action to prevent such conduct.  Compl. ¶ 404–07.  Liability based on a negligent hiring or retention theory in Virginia is premised on a situation involving "an unreasonable risk of harm to others."  *J. v. Victory Tabernacle Baptist Church*, 372 S.E.2d 391, 394 (Va. 1988).  And "the Virginia Supreme Court has determined that 'an unreasonable risk of harm' element requires the threat of serious and significant *physical injury*."  *Parker v. Geneva Enters., Inc.*, 997 F. Supp. 706, 713 (E.D. Va. 1997) (emphasis added) (citations omitted) (discussing mainly negligent hiring cases, but observing that the rationale behind *Leidig v. Honeywell, Inc.*, 850 F. Supp. 796 (D. Minn. 1994), a negligent

retention, case "would logically apply to either cause of action," i.e., negligent hiring *or* negligent retention).

Plaintiff does not directly address Defendant's position or the foregoing case law, but in Part H.1 of his Response to Defendant's Motion to Dismiss, Plaintiff does argue that he adequately pleads a physical injury. Although Part H.1 relates specifically to negligent infliction of emotional distress—an issue I take up *infra*—I will consider Plaintiff's position on his alleged physical injury here.

In Part H.1, Plaintiff reiterates that his Complaint "alleges that he suffered 'severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.'" Pl.'s Resp. 22 (quoting Compl. ¶ 214). In my view, this sort of run-of-the-mill emotional distress language falls woefully short of alleging a physical injury as set forth in the aforementioned cases. In *Victory Tabernacle*, "the plaintiff alleged that her ten year-old daughter had been 'repeatedly raped and sexually assaulted' by an employee of the defendant and that 'when Victory hired [this employee], it knew, or should have known, that he had recently been convicted of aggravated sexual assault.'" *Parker*, 997 F. Supp. at 713 (alteration in original) (quoting *Victory Tabernacle*, 372 S.E.2d at 391). While the facts alleged in *Victory Tabernacle* are no doubt among the most severe imaginable under a negligent retention theory, they are demonstrative of the sort of allegations required to adequately plead such a claim in the Commonwealth of Virginia. I will dismiss Plaintiff's claim for negligent retention.

## 2. Negligent Supervision

I will also dismiss Plaintiff's negligent supervision claim. "[A] cause of action for negligent supervision is not recognized in Virginia." *Ramsburg v. Target Stores, Inc.*, 982 F.

Supp. 1194, 1196 (W.D. Va. 1997) (citations omitted).  Plaintiff has failed to state a claim upon which relief can be granted.

### D.  Intentional Infliction of Emotional Distress (Eighth Claim for Relief)

"Because of the risks inherent in torts where injury to the mind or emotions is claimed," actions for intentional infliction of emotional distress are "not favored" in the law.  *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991) (citing *Ruth v. Fletcher*, 377 S.E.2d 412, 415 (Va. 1989)). In order to recover under an intentional infliction of emotional distress theory, a plaintiff must allege (and, of course, eventually prove) the following four elements:  "the wrongdoer's conduct is intentional or reckless; the conduct is outrageous and intolerable; the alleged wrongful conduct and emotional distress are causally connected; and, the distress is severe."  *Id.* (citing *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974)).

Defendant cites the high burden of proof for a plaintiff alleging intentional infliction of emotional distress.  Indeed, Griffith "must be required to prove such a case by clear and convincing evidence."  *Ruth*, 377 S.E.2d at 416.  The ultimate burden of proof is, of course, not at issue in the instant Motion to Dismiss.  Nevertheless, I find that Plaintiff has failed to state a claim upon which relief can be granted.  Even accepting all of Griffith's allegations as true, and drawing every reasonable inference in his favor, the alleged behavior would not rise to the high level of outrageousness required by the courts of this Commonwealth.

When it comes to alleging "outrageous and intolerable" conduct, Plaintiff's Complaint does not pass muster.  "[I]t is insufficient for a defendant to have 'acted with an intent which is tortious or even criminal.'"  *Russo*, 400 S.E.2d at 162 (citation omitted).  Indeed, "[l]iability has been found *only* where the conduct has been so outrageous in character, and so extreme in degree, as to *go beyond all possible bounds of decency*, and to be regarded as atrocious, and

utterly intolerable in a civilized community." *Id.* (emphasis added); *see also Paroline v. Unisys Corp.*, 879 F.2d 100, 112 (4th Cir. 1989) ("Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'") (citation omitted), *reversed and remanded on other grounds*, 900 F.2d 27 (4th Cir. 1990).  It is plain that Plaintiff's allegations of age discrimination do not implicate Wal-Mart in any activity that this Court could deem outrageous or intolerable in a civilized society.  *See*, *e.g.*, *Paquette v. Nestle USA, Inc.*, No. 4:06CV00060, 2007 WL 1343794, at *4–5 (W.D. Va. May 7, 2007) (dismissing, as insufficiently outrageous under the law, plaintiff's allegation that she was "fired on . . . trumped up charges of dishonesty . . . .").

I also find that Plaintiff's Complaint fails to allege a sufficient severity of emotional distress under the fourth element described in *Russo*.  Briefly stated, emotional distress is severe enough to warrant eventual recovery "only where . . . no reasonable person could be expected to endure it."  *Russo*, 400 S.E.2d at 163.  I do not endeavor to minimize the anguish that Plaintiff allegedly endured as a result of his termination; however, nothing in Plaintiff's Complaint can be construed as anything more than garden variety claims of emotional distress.  For these reasons, I will dismiss Plaintiff's intentional infliction of emotional distress claim.

### E.  Negligent Infliction of Emotional Distress (Ninth Claim for Relief)

Plaintiff conclusorily asserts that Wal-Mart negligently engaged in conduct that proximately caused Plaintiff's emotional distress.  Compl. ¶¶ 420–22.  As best as the Court can tell, Plaintiff is merely re-labeling his intentional infliction of emotional distress claim, or perhaps pleading said claim under an alternative theory of recovery; however, as I explained in my discussion of Plaintiff's negligent retention claim, *supra*, Plaintiff has not adequately pleaded the existence of any physical injury.  Failing this, Plaintiff fails to state a claim for negligent

infliction of emotional distress under the law of Virginia. *See Delk v. Columbia/HCA Healthcare Corp.*, 523 S.E.2d 826, 833 (Va. 2000) (discussing *Hughes v. Moore*, 197 S.E.2d 214, 219 (Va. 1973)).  I cannot allow Plaintiff's claim to proceed, and I will dismiss it.

## F.  Sex Discrimination

Finally, I observe that Griffith's Complaint contains a sub-heading entitled "Wal-Mart's Discrimination Against Mr. Griffith on the Basis of Age *and Sex*."  Compl. 33 (emphasis added). Relatedly, Griffith's two EEOC charges both have the "sex" box checked, as I previously mentioned.  Nevertheless, while Griffith's case was still pending in the Eastern District of North Carolina, he indicated that, "[w]hile 'sex' is listed in the subheading of the Complaint, Griffith does not allege a claim for sex discrimination in the Complaint."  (docket no. 45 at 6 n.7).

I consider the foregoing a judicial admission that Plaintiff has made no effort to withdraw.  *See Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) (discussing the binding nature of judicial admissions).  Indeed, none of the Claims for Relief that implicates Griffith makes any mention of sex discrimination.  Furthermore, in his Response, Plaintiff did not oppose Defendant's argument that Plaintiff is no longer asserting a sex discrimination claim. I will therefore dismiss Plaintiff's Complaint to the extent it alleges sex discrimination.

## IV.  CONCLUSION

For the reasons I have explained, I will GRANT Defendant's Motion to Dismiss with respect to Plaintiff's ADEA harassment/hostile work environment claim; his North Carolina Public Policy claim; his negligent retention and supervision claims; his intentional infliction of emotional distress claim; his negligent infliction of emotional distress claim; and his sex

discrimination claim.  I will DENY Defendant's Motion to Dismiss with respect to Plaintiff's ADEA discrimination/disparate treatment and retaliation claims.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this  24th  day of August, 2012.


NORMAN K. MOON
UNITED STATES DISTRICT JUDGE